JUDGE BERMAN

**11 CIV 5442**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————x

L. KEITH CASAGRANDE,

                  Plaintiff

    -against-

SIEMENS AG, SIEMENS CORPORATION
and SIEMENS ENERGY, INC.,

                Defendants.
——————————————————————x

Index No.

VERIFIED COMPLAINT

U.S.D.C. S.D. N.Y.
CASHIERS

    Plaintiff **L. KEITH CASAGRANDE**, by and through his counsel, McCallion & Associates LLP, for his Verified Complaint against the above-captioned defendants, alleges as follows:

## THE PARTIES

    1. Plaintiff L. Keith Casagrande ("Plaintiff" or "Casagrande"), who resides in Daytona Beach Shores, Florida, began working as an engineering technician for the CBS Nuclear Business Unit ("CBS") on October 15, 1973. Plaintiff worked for CBS until August 31, 1998, when CBS's Power Generation Business Unit was sold to Defendants' Siemens Westinghouse Power Generation Unit. At the time of said transfer, Plaintiff had approximately 22 years of "eligibility service" under CBS's pension plan. Plaintiff retired in October 2010, and was credited with only approximately half of the service he had accrued while working at CBS.

    2. Defendants Siemens AG, Siemens Corporation and Siemens Energy, Inc. (collectively referred to as "Defendants" or "Siemens") are related companies.

3. Defendant **SIEMENS AG** is headquartered in Munich, Germany, and is a global powerhouse in electronics and electrical engineering, operating in the industry, energy, and healthcare business sectors. For more than 160 years, Siemens AG has built a reputation for leading-edge innovation and the quality of its products, services and solutions. With 405,000 employees in 190 countries, Siemens AG reported worldwide revenue of $102.9 billion in fiscal 2010 and recorded its best operating results in the company's history; with total operating profits rising to more than $11.1 billion.

4. Defendant **SIEMENS CORPORATION**, a U.S. subsidiary of Siemens AG, is responsible for strategic direction, design, and governance of Siemens' human resources policies and practices in the U.S., including policies and practices relating to employment and employee benefits. Siemens Corporation employs approximately 62,000 people throughout all 50 states and Puerto Rico and reported revenue of $19.9 billion in 2010. Siemens Corporation is headquartered at 300 New Jersey Avenue, Suite 1000, Washington, DC 20001, and its in-house counsel and attorneys are located at 527 Madison Avenue, 8th Floor, New York, NY 10022. Siemens Corporation's human resource and other operating offices are located at 170 Wood Avenue, South Iselin, NJ 08830; however, during most of the time period relevant to this case, Siemens Corporation's main offices for human resources and other operating offices were located at 153 East 53rd Street, New York, N.Y. 10022.

5. Defendant **SIEMENS ENERGY, INC.**, a U.S. subsidiary of Siemens AG, is headquartered in Orlando, FL.

## JURISDICTION and VENUE

6. This Court has subject matter jurisdiction over this matter pursuant to the Employee Retirement Income Security Act, 29 U.S.C. 1132(a)(1)(A), which permits a participant or beneficiary of an employee benefit plan to bring a civil action to recover benefits due to him under the terms of his plan and to enforce his rights under the terms of the plan.

7. Venue is proper in this District in that the Defendant corporations conduct a substantial portion of their business from offices located within the District, and many of the actions and decisions relating to Plaintiff's pension benefits were made here.

## FACTUAL BACKGROUND

8. Plaintiff began working as an engineering technician at the CBS/ Westinghouse Nuclear Business Unit in Monroeville, PA on October 15, 1973, and he worked there until April 30, 1992, when he was permanently separated from the CBS/ Westinghouse Environmental Business Unit. The term "permanent separation" means that the employee is being terminated through no fault of his own, but, rather, due to purely business reasons, such as a plant shutdown, and there is no reasonable expectation that the employee will be recalled.

9. Plaintiff was rehired by the CBS/ Westinghouse Power Generation Business Unit in Orlando, FL on May 1, 1995 and worked there until August 31, 1998, at which time the CBS/Westinghouse unit by which he was employed was sold to the Defendants. Siemens' new U.S. entity was named Siemens Westinghouse Power Generation, Inc. and was subsequently renamed Siemens Energy, Inc.

10. Upon information and belief, Plaintiff contributed to the CBS qualified pension plan during the years that CBS had a contributory portion of the plan; with the exception of the six year period from January 1, 1985 to December 31, 1990 where the Plaintiff elected to not

3

contribute. In other words, at times CBS fully funded its employees' pension plan and, at other times, CBS partially funded the plan. When CBS partially funded the plan, the employee could contribute the balance at his (or her) option.

11. Thereafter, Plaintiff received a letter from the CBS Benefits Access Center, dated November 13, 1998 regarding the status of his pension benefits in light of the sale of the CBS unit to Siemens. See **Exhibit A** attached hereto. This letter confirmed that Plaintiff had 3.337 years of Credited Service as of the date of divestiture (i.e., the sale), and that he had 21.879 years of Eligibility Service as of that date. This letter was, upon information and belief, provided to Defendants by CBS at that time under the Asset Purchase Agreement between CBS and the Defendant. The letter also confirmed that, upon retirement, the Plaintiff's CBS monthly life annuity would be $431.35.

12. Over his years of service at CBS and Siemens, Plaintiff assumed increasing responsibilities in engineering, project management, and international marketing and sales management roles. In recognition of his contributions to Siemens, Plaintiff was promoted to an Executive Management position (Director, International Marketing and Sales) effective September 1, 2002; a significant career step. Upon information and belief, less than 1% of CBS' or Siemens' US employees ever reach this management (and benefit) level ( i.e., full executive, incentive eligible).

13. Siemens' Executive Management employees are entitled to the Siemens Executive Benefit Program; which, at the time, included an Annual Incentive Bonus (based on both Siemens' and the Executive's performance); Long Term Incentive Bonuses (for employee retention); and eligibility to participate in the Siemens Executive Pension Plan ("EPP").

14. Upon information and belief,) the Siemens EPP was established in order to provide supplemental pension benefits to a select group of management employees, such as Plaintiff, and provided these supplemental pension benefits in the form of deferred compensation.

15. Plaintiff attended an Executive Orientation in September 2002, at which time Jack W. Prietsch of Defendants' Human Resources Department reviewed the Executive Program Benefits Presentation with Plaintiff. Specifically, Mr. Prietsch and Plaintiff reviewed the brochure entitled, "Understanding the Siemens Westinghouse Executive Pension Plan [EPP]" (hereinafter referred to as "the Brochure"). See **Exhibit B** attached hereto.

16. The Brochure clearly stated:

> Your executive pension base is calculated by multiplying your executive multiplier times your average total compensation…Your executive multiplier is calculated by multiplying your total eligibility service times 1.47%. For this calculation, count your eligibility service at Siemens Westinghouse plus any applicable service you may have had at the former CBS/ Westinghouse…

**Exhibit B at p. 2.**

17. The Brochure was also attached to a letter, dated May 12, 2005, addressed to Plaintiff and signed by Randy Scheff, Vice President of Siemens Human Resources Department. See **Exhibit C** attached hereto. This letter, entitled "Executive Pension Update," discussed Revised Eligibility and Transfer Rules.

18. Upon information and belief, the Siemens Westinghouse Executive Pension Plan dated January 1, 2002, (hereinafter referred to as "the Siemens EPP"), was the plan in effect when Plaintiff received the promotion. **See Exhibit D** attached hereto.

19. Similar to the language in the Brochure, the Siemens EPP states: "Executive Pension Base means the amount determined by multiplying 1.47 percent times Average Annual

Compensation times the number of years of Executive Benefit Service...Executive Benefit Service means the Executive's total years of Executive Benefit Service under the Westinghouse Executive Plan and the total years of Eligibility Service as defined under the Siemens Westinghouse Retirement Plan which the Executive has after September 1, 1998 or the date that the Executive became an Executive." See **Exhibit D** attached hereto, at p. 4.

20. As such, both the Brochure and the Siemens EPP calculate the Executive's total Benefit Service based on (1) the Executive's total years of Executive Benefit Service under the CBS Westinghouse Executive Pension Plan, and (2) the Executive's total years of Eligibility Service as defined under the Siemens Westinghouse Retirement Plan.

21. "Eligibility Service" is defined in Section 1 of the Siemens Westinghouse Retirement Plan dated September 1, 1998 as "all Credited Service, all service that would be Credited Service except that the Employee elected not to contribute,....See **Exhibit E** attached hereto, at p. 5.

22. Eligibility Service is also defined in Section 1 of the Siemens EPP dated December 1, 2007 as being "equal to Eligibility service through December 31, 2001 in the Siemens Westinghouse Retirement Plan," and "equal to Vesting Service in the Siemens Pension Plan" after December 31, 2001. See **Exhibit F** attached hereto, at p. 4.

23. In discussions related to Plaintiff's retirement benefits, Plaintiff and Defendants agreed that Plaintiff's total years of Eligibility Service under the Siemens Westinghouse Retirement Plan ran from the Defendants' date of purchase of the CBS Power Generation Business Unit (August 19, 1998) through the Plaintiff's date of retirement (September 30, 2010); i.e., 12+ years.

24. However, Plaintiff and the Defendants disagreed as to how to calculate the Plaintiff's Executive Benefit Service under the CBS/ Westinghouse Executive Pension Plan.

25. In order to better understand this issue, Plaintiff's counsel, by letters dated June 27, 2008, July 10, 2008 and October 30, 2008 requested a copy of the CBS/ Westinghouse Executive Pension Plan from both CBS and Defendants. See **Exhibit G** attached hereto. CBS replied by letter of August 4, 2008 that since the Plaintiff was not a member of the Westinghouse Executive Program, it could not furnish a copy of the CBS Executive Pension Plan to him. See **Exhibit H** attached hereto.

26. Defendants replied by letter of July 24, 2008 that, since the CBS Executive Pension Plan and other documents requested were CBS sponsored plans, CBS should be the proper party to provide Plaintiff with the documents. See **Exhibit I** attached hereto. To date, Plaintiff has not received from Defendants a copy of the CBS/ Westinghouse Executive Pension Plan in effect at the time of the Plaintiff's promotion.

27. Plaintiff, while preparing for retirement in September 2010, was able to obtain a copy of the CBS/ Westinghouse Executive Pension Plan dated December 31, 2005 (hereinafter referred to as "the CBS EPP") from CBS' website. A copy is attached hereto as **Exhibit J**.

28. The CBS EPP states: "Executive Pension Base means the amount determined by multiplying 1.47 percent times Average Annual Compensation times the number of years of Executive Benefit Service.... See **Exhibit J** at p. 3. "Executive Benefit Service" is defined as "the Executives total years of "Eligibility Service if: (i) the Executive was making the Maximum Contribution during each of those years; or (ii) the Executive (1) was making the Maximum Contribution during each of those years after the date he or she first became an

Executive, and (2) has complied with the provisions of the Executive Buy Back process (as set forth in Appendix A of the Plan)....". See **Exhibit J** at pp.2-3.

29. Appendix A of the CBS EPP, entitled "Executive Buy Back" outlines a process by which newly eligible executives were eligible to "buy back" past years of service for periods of time for which they did not make the "Maximum Contribution" under the plan and states, that upon qualifying as an Executive, "the Executive will be offered an Executive Buy Back opportunity" on a "one time" basis. See **Exhibit J,** Appendix A at p. 11.

30. The CBS EPP further provides that the "employee will be permitted to pay an amount equal to the Maximum Contributions that would have been payable during the ten years prior to the date he or she first became an Executive [or such lesser period] ...in order to 'buy back' his or her non-contributory years of Service." See **Exhibit J,** Appendix A at p. 12.

31. The CBS EPP thus clearly provides newly eligible Executives the opportunity to buy back their non-contributory years of service and to have their Executive Pension Base determined by their total years of "Eligibility Service."

32. Similarly, Appendix A of the Siemens Westinghouse Executive Pension Plan dated January 1, 2002, which was the plan in effect when Plaintiff received a promotion, outlines a process by which newly eligible executives, such as Plaintiff, were eligible to "buy back" past years of service for periods of time for which they did not make the "Maximum Contribution" under the plan. See **Exhibit D,** Appendix A, at p. 12.

33. The Siemens EPP, like the CBS EPP, further provides that the "employee will be permitted to pay an amount equal to the Maximum Contributions that would have been payable during the ten years prior to the date he or she first became an Executive [or such lesser period]

…in order to 'buy back' his or her non-contributory years of Service." See **Exhibit D, Appendix A,** at p. 12.

34. Upon information and belief, Plaintiff was never offered the opportunity by Defendants to "buy back" any past years of service for periods of time, if any, that he had not been making the "Maximum Contribution" under the plan, despite the fact that he had been promoted to an executive position that made him eligible to participate in this "buy back" plan.

35. In addition, Plaintiff did, upon information and belief, make the "Maximum Contributions" to the plan during the ten year period of time prior to the date that he first became a Siemens executive (i.e., from 1992 to 2002), and, as such, no additional payment to Siemens would have been due even if he were notified of – and exercised- his right to "buy back" pursuant to Appendix A of defendant's pension plan. See **Exhibit D,** p. 12.

36. Upon information and belief, Plaintiff met all of the EPP eligibility requirements outlined in the Brochure and Mr. Scheff's letter of May 12, 2005, which were reviewed during Plaintiff's orientation session with Mr. Prietsch (see **Exhibits B and C).**

37. Plaintiff also met all of the EPP eligibility requirements contained in the Siemens EPP and the CBS EPP, which provide that his Executive Benefit Service and Executive Pension Base should be determined by his total years of eligibility/vesting service. See **Exhibits D, E, F and J.**

38. On January 5, 2007, in response to Plaintiff's request for the amount of his estimated Executive Pension benefits, assuming his last day of employment would be October 31, 2009, Plaintiff received a "Pension Estimate Calculation Statement, dated January 5, 2007, representing that his "Vesting Service at Termination" as of the first day that he would begin receiving benefits (11/01/09) would be 33.083 years; that his "Benefit Service at Termination"

would be 33.046 years; and that his Executive Pension Single Life Annuity monthly payment amount would be $4,574.36. See **Exhibit K** attached hereto. This January 5, 2007 Statement was consistent with Plaintiff's expectations.

39. On March 28, 2007, Plaintiff received an Executive Pension Plan Information Notice stating that the Executive Pension Plan calculations were now available on Siemens' Benefits Resources website. See **Exhibit L** attached hereto (with Plaintiff's handwritten calculations and notations regarding monthly records).

40. Thereafter, Plaintiff obtained on-line estimates of his monthly Executive Pension Benefits. These on-line estimates essentially confirmed Defendant's January 5, 2007 estimates set forth in **Exhibit K**.

41. On December 21, 2007, Plaintiff received a Siemens Pension Plans Informational Notice stating that during a recent data audit, Defendant "confirmed" with CBS that Plaintiff had 3.337 years of credited service with CBS as of August 31, 1998 rather than 21.879 years as of that date, and that Plaintiff had 26.213 years of vesting service as of December 31, 1998 rather than 21.213 years of vesting service as of that date. See **Exhibit M** attached hereto.

42. The December 21, 2007 Notice further stated that Siemens' plans will only recognize the 3.337 years of credited service from CBS; that the "change" in credited service impacted Plaintiff's EPP benefit; and that Siemens has recalculated his EPP benefit. See **Exhibit M**. In addition, the Notice informed Plaintiff that a revised Pension Estimate Calculation Statement has been mailed to him by separate envelope.

43. This December 21, 2007 Notice from Defendant (**Exhibit M**) essentially nullified all of Plaintiff's eligibility service at CBS from 1973 to 1995 with regards to his Siemens EPP Benefits. The Notice also incorrectly represented that CBS had "changed" its calculations of

Plaintiff's credited service, when in fact CBS had always taken the consistent position confirming that Plaintiff had 3.337 years of credited service as of August 31, 1998. See CBS' letter dated November 13, 1998, attached hereto as **Exhibit A.**

44. Upon information and belief, what Defendants actually did through their Notice of December 21, 2007 was to recalculate Plaintiff's Pension benefits based upon his years of credited service (3.337), as of August 31, 1998, rather than on his years of vesting/ eligibility service (21.879) as of that date. Compare **Exhibit A** and **Exhibit M** attached hereto.

45. On December 22, 2007, Plaintiff received the revised Pension Estimate Calculation Statement, representing that he would only have 14.504 years of "Benefit Service at Termination" as of his projected last late of employment (10/31/09), rather than 33.046 years that defendant had previously calculated for him; that his "Vesting Service at Termination" would be 37.083 years; and that his Executive Pension Single Life Annuity monthly payment amount will be $1,012.22 per month rather than $4,574.36 per month that Defendants had previously calculated for him. See **Exhibit N** attached hereto.

46. On or about January 21, 2008, Plaintiff made the first in a series of appeals to the Defendants regarding his reduced Executive Pension Benefit. This appeal was rejected by the Defendants on March 10, 2008. In their letter rejecting the appeal, Defendants represented that they had contacted CBS and that CBS "confirmed" that, due to Plaintiff's prior distribution, Plaintiff would only have been entitled to 3.337 years of Executive Benefit Service under the CBS Executive Pension Plan. See **Exhibit O** attached hereto. With this, Defendants concluded that, since Siemens recognized prior service under CBS, Plaintiff could only be credited with 3.337 years of Executive Benefit Service under the Siemens EPP. See **Exhibit O**.

47. Thereafter, by letter of June 27, 2008, Plaintiff's attorney requested a copy of the CBS Executive Pension Plan from both CBS and the Defendant. See **Exhibit P** attached hereto. However, on August 4, 2008, CBS replied that since the Plaintiff was not a member of the Westinghouse Executive Program, they could not furnish a copy of the CBS Executive Pension Plan to him. See **Exhibit Q** (w/o exhibits) attached hereto.

48. On August 28, 2008, Defendants sent Plaintiff's attorney a letter stating that, since the documents requested are CBS Sponsored plans, CBS was the proper party to provide you with the documents. See **Exhibit R** attached hereto.

49. On October 30, 2008, Plaintiff, through his attorney, took exception to Defendants' refusal to provide Plaintiff with a copy of the CBS Executive Pension Plan, especially since Defendants had nullified all of Plaintiff's years of service based upon their review of this CBS Executive Pension Plan. See **Exhibit S** attached hereto.

50. On November 25, 2008, Defendants replied to Plaintiff and his counsel, restating their position that CBS would be the only appropriate party to provide the documents to Plaintiff. See **Exhibit T** attached hereto.

51. To date, although the Defendants have relied substantially on the CBS Executive Pension Plan in support of their position, they have continued to refuse to provide a copy of the CBS Plan to Plaintiff.

52. On or about April 6, 2009, Plaintiff, through his undersigned counsel, requested that Siemens reconsider its denial of Plaintiff's administrative appeals. See **Exhibit U** attached hereto.

53. On or about September 16, 2009, Defendants wrote to Plaintiff and his counsel, admitting that they had "not been able to find out from CBS how it exactly would determine

the amount of service [Plaintiff] had with CBS/Westinghouse prior to coming over to Siemens for purposes of calculating his EPP benefits...." See **Exhibit V** attached hereto.

54. In this September 16, 2009 letter, Siemens unilaterally increased Plaintiff's monthly single life annuity from the EPP (from $1,012.22) to $2,729.92. However, Defendants also increased the deduction for Plaintiff's CBS' Pension Annuity (used as an offset to reduce Plaintiff's EPP benefits) to $1,171.11, while the number used in previous EPP calculations had been $431.35. See **Exhibit V**.

55. In a letter dated April 23, 2010, Plaintiff reiterated his position that he had, in fact, made the Maximum Contributions as required under Appendix A of the Siemens EPP and that he should be credited with his vesting/ eligibility service at CBS. See **Exhibit W** attached hereto. In this letter, Plaintiff also requested an explanation for the Defendants' reasoning (and basis under the Plans) for the increased deduction for Plaintiff's CBS' Pension Annuity from $431.35, which was used in previous calculations, to $1,171.11, which had been used Defendants' EPP calculations dated September 16, 2010. See **Exhibit W**.

56. On June 7, 2010, Defendants responded by letter, asserting that the Executive Buyback Provision in Appendix A did not apply to Plaintiff. See **Exhibit X** attached hereto. In this letter, Defendants also attempted to provide an explanation for the increased deduction for Plaintiff's CBS' Pension Annuity, but failed to provide any support based upon the provisions of the Plans themselves for this increase.

57. On July 12, 2010, Plaintiff notified Defendants of his election to retire, effective October 1, 2010, and requested an updated Siemens Pension Plan Estimate. Plaintiff also requested that if Defendants continued to include any proposed offsets in his Siemens EPP

benefit, Defendants should provide him with the applicable reference(s) (and a copy thereof) to the specific plan provisions that support these proposed offsets. See **Exhibit Y** attached hereto.

58. On August 23, 2010, Plaintiff filed another appeal to Defendants' Administrative Committee (see **Exhibit Z**), and on the following day (August 24, 2010), Plaintiff's counsel wrote to Defendants' Senior Counsel, summarizing Plaintiff's position. See **Exhibit AA** attached hereto.

59. On September 27, 2010, Defendants denied Plaintiff's appeal. See **Exhibit BB**. However, in this letter, Defendants unilaterally determined that Plaintiff's "Vesting Service at Termination" would be 38.000 years; that his "Benefit Service at Termination" would be 27.963 years; and that his Executive Pension Single Life Annuity monthly payment amount would be $3,167.93. Defendants did not include Plaintiff's latest (i.e., 2010) annual bonus in the updated Calculation Statement attached to this September 27, 2010 letter. See **Exhibit BB**.

60. On October 7, 2010, Plaintiff filed a second appeal to the Administrative Committee of Siemens Corporation. See **Exhibit CC** attached hereto. At this point, Plaintiff had been able to obtain a copy of the CBS Executive Pension Plan dated December 1, 2005, which was published after Plaintiff's departure from CBS. Plaintiff referred to this Plan in his appeal and attached excerpts from the Plan. See **Exhibit CC**. However, Plaintiff never received a copy of the CBS Plan that Defendants relied upon when they first nullified all of Plaintiffs Vesting/Eligibility service at CBS from 1973 to 1995.

61. On January 4, 2011, Defendants denied Plaintiff's last administrative appeal, and notified him that he had the right to bring a civil action under the Employee Retirement Security Act of 1974. See **Exhibit DD** attached hereto.

62. To this date, Plaintiff still has not received a copy of the Plan that Defendants supposedly relied upon to nullify, for purposes of computing his Siemens EPP benefits, all of Plaintiff's eligibility service at CBS from 1973 to 1995.

63. Plaintiff retired, effective October 1, 2010, and he has not received pension benefits at the level to which he is entitled, and which Defendants had represented that he would receive.

64. Plaintiff has annotated a copy of the Defendant's Calculation Statement dated September 24, 2010 to show the calculations indicating what Plaintiff should be receiving in terms of vesting/ eligibility service, final bonus, and actual CBS annuity. See **Exhibit EE**. This marked Calculation Statement, dated June 30, 2011, shows 38.000 years of "Benefit Service at Termination" rather than 27.963 years that Defendants had most recently calculated for him. It also includes Plaintiff's latest Annual Bonus (and eliminates his 6th highest Annual Bonus from the calculation). These calculations further reflect Plaintiff's Actual CBS and Siemens Annuities, and show that Plaintiff's Executive Pension Single Life Annuity payment amount should be $6,387.68 per month, rather than $3,167.93 per month as Defendants have asserted in their most recent calculations. See **Exhibits CC and EE** attached hereto.

## COUNT I
### (Violations of ERISA pursuant to 29 U.S.C. 1132(a)(1)

65. Plaintiff repeats and realleges each and every foregoing paragraph of the Complaint as though fully set forth herein.

66. Plaintiff's rights under defendants' pension plan were denied by defendants in that, upon his retirement effective October 1, 2010, they failed to make benefit payments to him in amounts to which he was entitled to receive, and in amounts based upon the calculations which defendants had represented to him would be used to compute his pension benefits.

67. Plaintiff is, therefore, is entitled, pursuant to the provisions of ERISA, including 29 U.S.C. 1132(a)(1), to recover benefits due and owing to him pursuant to defendants' plan, to enforce his rights under the terms of the plan, and to clarify his rights to future benefits under the terms of the plan.

68. Plaintiff, therefore, is entitled to monetary damages in an amount representing the difference between what he should have received pursuant to the marked Calculation Statement, dated June 30, 2011. (**Exhibit EE** attached hereto) and what Plaintiff has actually received since his retirement until the date of judgment in this case.

## COUNT 2
### (Declaratory Judgment Clarifying Plaintiff's Rights under Defendants' Plan)

69. Plaintiff repeats and realleges each and every foregoing paragraph of the Complaint as though fully set forth herein.

70. Pursuant to the provisions of ERISA, including 29 U.S.C. 1132(a)(1), Plaintiff is entitled to a Declaratory Judgment clarifying and confirming that he is entitled to receive future benefits under Defendants' plan in amounts based upon calculations set forth in **Exhibit EE** attached hereto, as well as in other representations made to Plaintiff by Defendants as to benefit amounts that he would be receiving upon retirement, which were relied upon by Plaintiff in deciding to remain as an employee and executive of the Defendant companies until retirement.

## COUNT 3
### (Injunctive Relief)

71. Plaintiff repeats and realleges each and every foregoing paragraph of the Complaint as though fully set forth herein.

72. Plaintiff is entitled to a preliminary and permanent injunction enjoining defendants from making calculations and paying benefits to Plaintiff which are less than that which he should be entitled to, and as set forth in the marked Calculation Statement, dated June 30, 2011 **Exhibit EE** hereto.

## JURY TRIAL DEMAND

73. Plaintiff demands a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

(a) On **Count 1,** monetary damages in an amount representing the underpayment of pension benefits to Plaintiff since the date of his retirement;

(b) On **Count 2,** a Declaratory Judgment clarifying and enforcing Plaintiff's rights to the full payment of his pension benefits as set forth in Defendants' Calculation Statement dated January 5, 2007 (**Exhibit EE** attached);

(c) On **Count 3,** a preliminary and permanent injunction enjoining defendants from underpaying Plaintiff's pension benefits;

(d) An award of attorney's fees and costs to Plaintiff; and

(e) Such other and further relief as this Court deems just and equitable.

Dated: New York, New York
July 13, 2011

McCALLION & ASSOCIATES LLP

By: Kenneth F. McCallion (KM 1591)
100 Park Avenue – 16th floor
New York, New York 10017
(646) 366-0880
Attorneys for Plaintiff

## VERIFICATION

**L. KEITH CASAGRANDE**, hereby affirms that he has read the foregoing complaint and knows the contents of the same to be true of his own personal knowledge and belief, except as to those matters affirmed on information and belief, and as to those matters, he believes them to be true.

Dated:   July 13, 2011

*/s/ L. Keith Casagrande*

**L. KEITH CASAGRANDE**